# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| TAMARA RACHEL SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:16-CV-114 |
| | ) | |
| JOHN BUNCICH, individually | ) | |
| and in his official capacity as | ) | |
| SHERIFF OF LAKE COUNTY, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the court on the motion to dismiss filed by Defendant John Buncich (DE 27).[1] Plaintiff Tamara Scott filed a response in opposition to the motion (DE 32) and Buncich filed a reply (DE 35). For the reasons discussed below, the motion is GRANTED in part and DENIED in part. The motion is granted as follows:

1) Scott's claim against Buncich, in his individual capacity, for denial of medical care is DISMISSED WITHOUT PREJUDICE;

2) Scott's claim against Buncich, in his individual capacity, for medical malpractice is DISMISSED WITHOUT PREJUDICE;

3) Scott's claims against Buncich, in his official and individual capacities, for conspiracy are DISMISSED WITH PREJUDICE;

---

[1] Scott named several defendants in addition to Sheriff Buncich, including Lake County, Indiana, Lake County Jail Administrator Willie Stewart, Lake County Jail Medical Director Dr. William Forgey, jail employee Patricia Kerr, "unknown employees of the Lake County Jail," Correctional Health Indiana, Inc., and "unknown employees of Correctional Health Indiana, Inc." The present motion to dismiss was filed by, and pertains only to, Defendant John Buncich.

4) Scott's claims against Buncich, in his official and individual capacities, for failure to intervene are DISMISSED WITH PREJUDICE;

5) Scott's claim against Buncich, in his official capacity, for punitive damages is DISMISSED WITH PREJUDICE; and

6) Scott's claim for indemnification is DISMISSED WITHOUT PREJUDICE.

The motion to dismiss is denied as to Scott's claim against Buncich, in his official capacity, for denial of medical care (i.e., Scott's *Monell* claim). All other claims asserted against all other defendants are unaffected by this Order and remain pending.

## BACKGROUND

Plaintiff Tamara Scott was arrested on April 1, 2014, and incarcerated in the Lake County Jail for approximately two months. Complaint, p. 2. Scott alleges that she experienced serious health problems while in jail and that her repeated entreaties for medical care were mostly ignored. *Id*. The factual foundation of Scott's lawsuit is summarized in the following paragraph from her Complaint:

> On or about April 6, 2014, Plaintiff began experiencing rectal problems. Despite constantly (for almost two months) seeking medical treatment from the Defendant Officers and Defendant Medical Care Providers, Plaintiff's condition went relatively untreated and, as a result, Plaintiff developed severe ulcerative colitis and other debilitating medical problems. These conditions exist to this day and will likely affect Plaintiff throughout the remainder of her life.

*Id*. Scott alleges in her Complaint that the Defendants' failure to provide her with proper medical care was "in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution." *Id*., p. 9. She brought this suit pursuant to 42 U.S.C. § 1983, seeking "compensatory damages, punitive damages, attorneys' fees, and costs" against the Defendants, including Buncich. *Id*., p. 17.

Scott alleges seven claims in her Complaint, to wit:

1) a claim for "denial of medical care" alleging that the "Defendants had notice of Plaintiff's medical need . . . and yet, they failed to provide her with necessary medical attention, in violation of the Fourth, Eighth, and Fourteenth Amendments . . . ." (Count I);

2) a claim for "conspiracy" to "depriv[e] Plaintiff of her rights . . ," alleging that the "Defendants reached an agreement among themselves to deprive Plaintiff of her constitutional rights and to protect one another from liability . . . ." (Count II);

3) a claim for "[f]ailure to intervene . . . to prevent the violation of Plaintiff's constitutional rights . . . ." (Count III);

4) an Indiana state law claim for "medical malpractice," alleging that the "Defendants, in rendering medical care and treatment to Plaintiff and/or holding themselves out as professionals who were rendering medical care" . . . "were negligent in the provision of medical care to Plaintiff." (Count IV);

5) a claim against Defendant Correctional Health, alleging that Correctional Health (a company that contracts to provide medical care at the Lake County Jail) "is liable as principals [sic] for all torts committed by their [sic] agents." (Count V);

6) a claim that "Buncich is liable as a principal for all torts committed by his agents[,]" pursuant to a theory of *respondeat superior* (Count VI); and

7) an Indiana state law claim for "indemnification," alleging that many of the defendants in this case are or were public employees and, as such, the "public entities are directed to pay judgments of civil rights violations" if those employees are found liable (Count VII).

Complaint, pp. 9-17. All of Scott's claims are asserted against all the named defendants, with the

exception of Count V, which names only Defendant Correctional Health, and Count VI, the state law *respondeat superior* claim against Buncich.

In her response brief, however, Scott states that she "agrees to voluntary dismissal of the following claims against Sheriff Buncich: (1) the individual capacity Denial of Medical Care claim (Count I), (2) the State Law Medical Malpractice claim (Count IV)[2], (3) the State Law *Respondeat Superior* claim (Count V)[3] and (4) all claims for punitive damages against him in his official capacity." [4] Plaintiff's Brief in Opposition (DE 32), p. 2 (capitalization in original).

---

[2] Count VI is a curious claim, at least as to Buncich. It purports to be an Indiana state law claim for medical malpractice. The Indiana Malpractice Act defines medical malpractice as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, *by a health care provider*, to a patient." Ind.Code § 34–18–2–18 (2010) (italics added). Also, under the Act, "for a trial court to have subject matter jurisdiction over a medical malpractice action, the action first must be brought before a medical review panel and that panel must render an opinion." *Sowell v. Dominguez*, 2011 WL 294758, at *9 (N.D. Ind. Jan. 26, 2011) (citations omitted). The court would have assumed that Count IV of Scott's complaint had nothing to do with Buncich since he is not a "health care provider" as that term is defined in the Act. I.C. § 34-18-2-14. All of this confusion is because Count IV of Scott's complaint asserts a state law medical malpractice claim in very general terms and, instead of specifying which defendant or defendants it is asserted against, simply uses the collective term "Defendants." In other words, it seems that Scott is agreeing to dismiss a claim against Buncich that could never have been brought against him in the first place. But, since Scott is agreeing to dismiss this claim, whatever exactly it is, this confusion doesn't need to be cleared up.

[3] Actually, Scott means Count VI, not Count V. The former is her claim against Buncich under a theory of *respondeat superior*, which she is agreeing to dismiss; the latter is a claim asserted against Defendant Correctional Health only, and has nothing to do with Buncich.

[4] Finally, something that makes sense. Scott is agreeing to dismiss any claim for punitive damages against Buncich in his official capacity. Good thing, because punitive damages are not available for such claims. "[I]n § 1983 litigation, punitive damages are not available against a municipality or any of its officers sued in his or her official capacity." *Tatum v. Clarke*, 2015 WL 6392609, at *13 (E.D. Wis. Oct. 22, 2015) (citing *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010)).

Accordingly, those claims are dismissed.

The following claims against Buncich remain and are the targets of his motion to dismiss:

1) Scott's claim for denial of medical care asserted against Buncich in his official capacity as Sheriff of Lake County (i.e., Scott's claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978));

2) Scott's claim for "conspiracy," alleging that Buncich (apparently in *both* his individual and official capacities) conspired with other defendants to cover up their acts or omissions regarding Scott's medical care (or lack thereof); and

3) Scott's claim alleging that Buncich failed to intervene "to prevent the violation of Plaintiff's constitutional rights" (again, apparently in both his individual and official capacities).[5]

---

[5] In Count VII of her complaint, Scott asserts a claim for indemnification. She contends that "[in] Indiana, public entities are directed to pay judgments of civil rights violations [for] which present or former public employees are liable, including civil rights violations as described in this Complaint." Complaint, p. 17 (citing I.C. § 34-13-4-1). Buncich contends that this court should dismiss this claim "with prejudice for lack of jurisdiction[]" since "'A claim for indemnity is not ripe until the underlying liability has been established.'" Defendant's Reply, p. 9 (quoting *Sowell v. Dominguez*, 2011 WL 294758 (N.D.Ind. Jan. 26, 2011)). Buncich is correct that this claim must be dismissed, but he is wrong in arguing that dismissal should be with prejudice. First, as Judge Moody explained in *Sowell*:"No one has been found liable yet in this case and no judgment has been entered. This court only has subject matter jurisdiction over a case in which the controversy is ripe. A claim is not ripe if it 'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.' *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (internal quotations omitted). Accordingly, any claim for indemnity resulting from this suit is not ripe until the underlying liability has been established. *See Doe v. City of Chi.*, 360 F.3d 667, 672 (7th Cir. 2004) ('We have warned repeatedly against trying to resolve indemnity before liability.'); *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ('We regularly say that decisions about indemnity should be postponed until the underlying liability has been established.')." *Sowell*, 2011 WL 294758, at *14. For this reason, Scott's indemnification claim must be dismissed. However, dismissal must be *without* prejudice, since the court is not reaching the merits of the claim. *See Henderson v. Adams*, 2016 WL 3548645, at *8 (S.D. Ind. June 30, 2016) ("'A dismissal for lack of federal jurisdiction is without prejudice.'") (quoting *Bovee v. Broom*, 732 F.3d 743 (7th Cir. 2013)); *see also El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 751

It is these remaining claims that Buncich asks the court to dismiss. Buncich argues that none of the remaining claims asserted against him can survive his motion because they "cannot survive the *Iqbal* plausibility standard[.]" Defendant's Reply, p. 3. More specifically, Buncich argues that he "is entitled to dismissal with prejudice on all individual capacity claims because Sheriff Buncich did not personally participate in any acts alleged by Plaintiff[], nor does Plaintiff allege that he has. . . . Plaintiff's § 1983 *Monell* claims against Sheriff Buncich, in his official capacity, must be dismissed with prejudice because Plaintiff has merely made boilerplate allegations of *de facto* municipal policy and does not allege a specific pattern or series of incidents that support the general allegation[,]" and "Plaintiff's demand for punitive damages against Sheriff Buncich, in his official capacity, must be dismissed because said claims are not permitted by law." Motion to Dismiss, pp. 1-2. Having dispensed with the punitive damages claim and the indemnification claim, the court moves to analyzing Scott's remaining claims.

## DISCUSSION

### I. Standard of Review.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed.R.Civ.P.

---

(7th Cir. 2013) ("Dismissals because of absence of federal jurisdiction ordinarily are without prejudice . . . 'because . . . once a court determines it lacks jurisdiction over a claim, it perforce lacks jurisdiction to make any determination of the merits of the underlying claim.'") (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1217 (10th Cir. 2006)). For these reasons, Scott's claim for indemnification against Buncich is dismissed without prejudice.

12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (2007). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### II. *Monell* official capacity claim for denial of medical care.

Before reaching the merits of Scott's *Monell* claim, the court must address a procedural and evidentiary issue. In support of her claims, especially her *Monell* claim, Scott filed a report prepared by the U.S. Justice Department, Civil Rights Division, on December 7, 2009. Justice Dept. Report (DE 32-1). The report was prepared following an investigation by the Justice Department of the "conditions at the Lake County Jail" and was issued "to recommend remedial measures needed to ensure that conditions at the LCJ meet federal constitutional requirements." *Id*., p. 1. The investigation into conditions at the jail identified the following problems:

1) the jail had inadequate mental health care (*Id*., p. 9);

2) the jail had "inadequate medical staffing and organization" (*Id*., p. 14);

3) the jail had "inadequate access to medical care" (*Id*., p. 15);

4) the jail had "inadequate acute and chronic medical care" (*Id.*, p. 17);

5) the jail had "inadequate comprehensive health assessment" (*Id.*, p. 18);

6) the jail had "inadequate medication administration" (*Id.*);

7) the jail kept "inadequate medical records" (*Id.*, p. 20); and

8) the jail had "inadequate quality improvement" (*Id.*).

The report then goes on to list dozens of "minimum remedial measures" the Lake County Jail was expected to take "[i]n order to rectify the identified deficiencies and protect the constitutional rights of inmates . . . ." *Id.*, pp. 25-32. (Many of the Justice Department findings and recommendations apply to conditions other than medical care deficiencies, such as general sanitation problems, lack of adequate fire safety, lack of adequate housekeeping and laundry services, etc.)

Along with the report, which is certainly damning, Scott filed a copy of the "Lake County Jail Settlement Agreement," entered into on August 18, 2010, between Lake County and the U.S. Justice Department (DE 32-2). The agreement mandated that the jail take specific actions to remedy the many problems identified in the report.

Buncich argues that the court should not consider the report. He notes the general rule that a court, when reviewing a motion to dismiss, "generally considers factual allegations of the complaint and any reasonable inferences that can be drawn from those allegations." Defendant's Reply, p. 5 (citation omitted). He also notes, correctly, that "[w]hen extraneous materials are presented, the court has discretion either to exclude the materials and handle the case as a straightforward motion to dismiss, or to consider the materials and convert to summary judgment." *Id.* (citation omitted). He concludes by urging that "this court should exclude

Plaintiff's exhibits attached to her Response and handle this matter as a straightforward motion to dismiss." *Id*., p. 6. (Buncich did not file a motion to strike Scott's exhibits.)

It is true that Scott does not cite or reference or even mention the report in her Complaint. It is a completely extraneous document that was prepared several years before the events giving rise to this lawsuit. The court concludes, for reasons set forth at length below, that the motion to dismiss can be resolved without consideration of the exhibits Scott filed and that it is unnecessary to convert the motion to dismiss to a motion for summary judgment.

Assuming the report is relevant and admissible in this case, an issue on which the court expresses no opinion at this point, it might be important to Scott's *Monell* claim (perhaps even crucially so) in a subsequent motion for summary judgment or at trial. This sword cuts both ways, of course, since the Defendants will presumably present evidence documenting the jail's efforts to remedy the problems identified in the report. This issue is potentially very significant in this case, given the nature of the findings contained in the report. It also bears noting that the report is presumptively admissible under Fed.R.Evid. 803(8)(A)(iii) as a "hearsay exception in civil cases for 'factual findings from a legally authorized investigation.'" *Daniel v. Cook Cty*., —F.3d—, 2016 WL 4254934, at *8 (7th Cir. Aug. 12, 2016) (quoting Rule 803). The Defendants bear the burden of rebutting the presumption of admissibility as well as the factual findings contained in the report. *Id*. at *11. "The defendants are entitled to a full opportunity to rebut it. . . . There may be individual circumstances that might justify exclusion of the Report, perhaps because it is no longer sufficiently timely or does not fit sufficiently well the issues in a particular case. *See, e.g.*, *Holland v. City of Gary*, 2013 WL 124061, at *5 (N.D. Ind. Jan. 8, 2013), aff'd, 533 F.App'x 661 (7th Cir. 2013) (Justice Department report *not admissible* since 'inspection

occurred long before the events in the Complaint and therefore are not evidence of the state of the Jail in 2010). But the general presumption of admissibility in the text of Rule 803(8) has considerable force.'" *Daniel*, 206 WL 4254934, at *11.

In *Daniel*, for example, the plaintiff, in support of his *Monell* claim, submitted a Justice Department report that found similar deficiencies in medical care in the Cook County (Illinois) Jail. The district court declined to consider the report, but the Seventh Circuit reversed that holding and remanded the case. In fact, many courts have addressed this precise issue and most have held that similar Justice Department reports are admissible to assess a plaintiff's *Monell* claim. *See id.*, at *9 (listing cases addressing admissibility of Justice Department investigative reports). Again, whether the report Scott submitted is relevant and admissible in this case is an issue for another day.[6]

---

[6] The court also notes that the report filed by Scott is a matter of public record. *See* "Justice Department Reaches Agreement to Correct Conditions at Lake County Jail," U.S. Department of Justice, Office of Public Affairs, Dec. 3, 2010 (available at https://www.justice.gov/opa/pr/justice-department-reaches-agreement-correct-conditions-lake-county-jail) (visited September 15, 2016). Even the settlement agreement itself, which Lake County and the Justice Department entered into on August 18, 2010, is published on the Justice Department website. *See* Lake County Jail Settlement Agreement (available at https://www.justice.gov/sites/default/files/crt/legacy/2011/01/05/lake_co_jail_settle_12-03-10.pdf) (visited September 15, 2016). A court can take judicial notice of relevant evidence if that evidence is a matter of public record. *See Archer v. Chisholm*, 2016 WL 3030244, at *5 (E.D. Wis. May 26, 2016) (a court "may take judicial notice of [documents that are] publicly available court records."); *see also*, *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013) (a court may take judicial notice of court records); *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.") (citations omitted); *Martinez v. Cook County*, 2012 WL 6186601, at *4 n. 7 (N.D.Ill. Dec.12, 2012) (collecting cases that have admitted similar DOJ reports at trial under Federal Rule of Evidence 803(8)).

Turning back now to Scott's *Monell* claim, the court must decide whether the claim can survive the motion to dismiss (without considering the Justice Department report). Scott argues that Buncich is liable for her alleged damages because he "promulgated rules, regulations, policies, and procedures as Sheriff of Lake County for the provision of certain medical care by medical personnel and correctional officers, including administration of medical treatment and medication, to detainees at the Lake County Jail." Complaint, p. 3, ¶ 8. She claims that Buncich's official policies prevented her from receiving adequate medical care at the jail and, consequently, the Lake County Sheriff's Department is liable for the damages she suffered as a result of that lack of care.

A suit against a sheriff in his official capacity is equivalent to a suit against the governmental entity that employs the sheriff, in this case the Lake County Sheriff's Department. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also*, *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (official capacity claims against municipal officials are claims against the municipal body itself). In order to prevail on such a claim, Scott must plead sufficient facts to show a pattern or practice of constitutional violations. *Wade v. Lain*, 2016 WL 2910026, at *1 (N.D. Ind. May 19, 2016) (citing *Monell*, 436 U.S. at 690-91). A recent opinion from the Seventh Circuit summarizes a plaintiff's burden in such cases (and thereby informs this court's standard of review). The appellate court explained as follows:

> To prove an official policy, custom, or practice within the meaning of *Monell*, [a plaintiff] must show more than the deficiencies specific to his own experience[.] .

> . . When seeking to rely upon indirect proof, he must come forward with evidence
> that could allow a reasonable trier of fact to find, . . . "systemic and gross
> deficiencies in staffing, facilities, equipment, or procedures in a detention center's
> medical care system." If [a plaintiff] meets this mark, he must then show that a
> policymaker or official knew about these deficiencies and failed to correct them. .
> . . He need not present evidence that these systemic failings affected other specific
> inmates. See *Davis* [*v. Carter*], 452 F.3d [686] at 695 [7th Cir. 2006)] ("To
> establish a widespread custom or policy, the plaintiff here was not required to
> show that Cook County's alleged repeated pattern of delay . . . actually caused
> pain and suffering to other inmates in need of medical intervention. . . .").

*Daniel*, 2016 WL 4254934, at *4 (some internal citations omitted). Of course, this case is before the court now on a motion to dismiss, so Scott need not *prove* that there were "systemic and gross deficiencies" in medical care at the Lake County Jail, but she must present "enough facts to state a claim to relief that is plausible on its face." To assess whether she has met that burden, the court turns first to the facts presented in Scott's Complaint.

Scott alleges that three days after she was arrested and incarcerated she began experiencing rectal bleeding and pain, which she says she reported "via medical slips and orally" to jail employees. Complaint, p. 6. Several days later, on April 8, 2014, Scott was seen by an unnamed jail employee "and was simply provided Preparation H (or a similar cream)" but did not receive a medical exam. *Id*., pp. 6-7. Scott claims her condition worsened and that from "April 8, 2014[,] and continuing until on or about April 20, 2014, Plaintiff–orally and by submitting both medical slips and grievances–constantly informed Defendants of her worsening condition and requested treatment. All of Plaintiff's requests were met with silence." *Id*., p. 7. When Scott was finally examined "by a Defendant doctor" she was told she needed a colonoscopy. Scott states that she "was never taken for a colonoscopy." *Id*. Scott states that her condition continued to worsen for two weeks and that "[s]he could no longer eat or drink without getting violently sick and experiencing severe diarrhea and vomiting. Plaintiff's rectal bleeding was so severe that she

had to wash her undergarments by hand four to five times a day." *Id*. During this two-week period, Scott continued to request medical treatment "both orally and by submitting medical forms and grievances" but "[a]gain, all of Plaintiff's requests were met with silence." *Id*. Scott alleges that she was not examined or treated again until May 16, 2014, but was only given medicine to treat diarrhea (which she says did not help). *Id*., pp. 7-8. Sometime after that (Scott does not give a date), she "passed out and a Defendant Officer found her on the floor. Plaintiff's face was bleeding profusely." *Id*., p. 8. Scott says that an unknown jail employee "check[ed] Plaintiff's vital signs and gave her a paper towel to put on her bleeding face. No other medical treatment was provided." *Id*. Scott claims her "condition worsened over the next ten (10) days. She was experiencing severe diarrhea (going to the bathroom 15 to 20 times per day) and losing more and more blood." *Id*. Despite her condition, Scott contends that the "Defendants failed to provide Plaintiff with any medical treatment." *Id*. Scott was released from jail on June 4, 2014, on a judge's order that she "be released on ICU court monitoring." *Id*. Scott asserts that the state court judge released her due to her health condition. *Id*. The day after she was released, Scott went to St. Anthony Hospital in Crown Point, Indiana, where she remained hospitalized for five days. *Id*. Doctors "discovered that Plaintiff had a severe rectal infection. Additionally, Plaintiff was severely dehydrated and had a very low hemoglobin count. Plaintiff was given blood transfusions . . ." and doctors "attempted to perform a colonoscopy[]" but were unable to perform the procedure "due to the severe infection, swelling and accompanying damage[.]" *Id*. Scott states that she "was ultimately diagnosed with severe ulcerative colitis and other debilitating medical problems[,]" which she alleges are the result of the Lake County Jail's failure to provide her with adequate medical care. *Id*., p. 9. Based on these facts, Scott alleges  that her "injuries

were proximately caused by policies and practices of . . . Sheriff Buncich[.]" *Id.*, p. 10. This is so, she alleges, because "Buncich . . . had notice of widespread policies and practices by health care and corrections employees at Lake County Jail pursuant to which inmates with serious medical conditions, such as Plaintiff, were routinely denied access to proper medical diagnosis and treatment." *Id.* More specifically, Scott supports her claim that Buncich is liable, in his official capacity, for systemic problems with the Lake County Jail's inmate medical program by making the following factual assertions:

> [T]here exist widespread policies or practices at Lake County Jail pursuant to which inmates are provided with inadequate health care, including policies and practices pursuant to which: (1) health care personnel commonly respond inadequately to inmates who have requested medical attention or medication or asked to see a doctor; (2) health care personnel commonly respond inadequately to inmates who exhibit obvious signs of a serious medical condition or illness; (3) health care personnel commonly fail to adequately examine inmates with a serious medical condition; (4) health care personnel with inadequate training, qualifications, and experience are charged with the responsibility of screening and evaluating inmate complaints and requests for medical care; (5) health care personnel fail to provide timely health care to inmates; (6) inadequate levels of health care staffing are maintained; (7) emergency medical care is inadequately provided to inmates; (8) corrections personnel commonly fail or refuse to respond when inmates request medical attention or ask to see a doctor; and (9) corrections personnel commonly fail or refuse to respond adequately to inmates who exhibit obvious signs of a serious medical condition or illness. . . . In this way, . . . Defendant Sheriff Buncich violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations. . . . The above-described widespread policies and practices, so well settled as to constitute de facto policy at Lake County Jail, were able to exist because governmental policy makers with authority over the same, namely, . . . Sheriff Buncich . . . , exhibited deliberate indifference to the problem, thereby effectively ratifying it.

*Id.*, pp. 10-11.

Buncich argues that Scott's factual assertions are insufficient to state a *Monell* claim because they are too vague and general. Buncich begins this argument by correctly stating that a

plaintiff asserting a *Monell* claim under §1983 cannot survive a motion to dismiss when plaintiff's claim "rests solely on conclusory allegations of a *de facto* municipal policy and fails to allege any well pled facts of any occurrence or policy other than the single incident involving the plaintiff." Defendant's Brief, p. 8 (citing *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985)). He also correctly states that a plaintiff cannot maintain a *Monell* claim merely by paying lip service to such a claim. As Buncich puts it, citing a case he claims is "directly on point," a *Monell* claim cannot survive a motion to dismiss where a plaintiff simply "'tracked' the elements of a *Monell* claim in his complaint by stating that the facts that were alleged were 'consistent with an institutionalized practice,' and 'despite knowledge of these institutional practices' the defendants failed to take action." *Id.*, p. 9 (quoting *Nevinger v. Town of Goodland, Ind.*, 2011 WL 2694662, at *4 (N.D. Ind. July 12, 2011)). After stating these principles of law, Buncich completes his argument for dismissal by claiming that Scott "has attempted to attach *Monell* liability by stating boilerplate allegations that merely track the elements of *Monell*, such as, 'Defendant Buncich promulgated rules, regulations, policies, and procedures as Sheriff.' . . . First, [Scott] has not provided facts outside the single incident alleged in her complaint. . . . Nor does plaintiff support her allegations with specific facts that indicate a specific pattern or series of incidents to support the *Monell* allegation." *Id.*, pp. 9-10. Accordingly, concludes Buncich, "[t]his court should determine that [Scott's] bare allegations failed to provide sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . ." *Id.*, p. 10. The court reads Scott's Complaint much differently and rejects Buncich's argument that her *Monell* claim is based only on bare allegations and conclusory statements. Yes, she includes boilerplate language in her Complaint to state the elements of a *Monell* claim. If that was all she

15

said about her claim then it would not survive the present motion. But it's not.

Scott responds to Buncich's argument first by reiterating the factual assertions in her complaint regarding the jail's failure to treat her serious medical condition despite her repeated oral and written requests. Plaintiff's Response, pp. 12-13. She maintains that these facts, coupled with the allegations set forth in the paragraph of her complaint quoted at length above (wherein she enumerates the alleged systemic problems with medical care at the jail), demonstrate that the Defendants' "course of conduct was consistent with other allegations in the complaint, asserting that Sheriff Buncich . . . 'directly encourage[d] and [is] thereby the moving force[] behind the very type of misconduct at issue by failing to adequately train and supervise health care and corrections employees, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiff.'" *Id*., p. 13 (quoting Complaint, ¶ 48). In other words, Scott argues, she not only has pled sufficient facts regarding her own health care ordeal at the jail, but also facts that she says are sufficient to establish (at least for Rule 12(b)(6) purposes) that the problems she experienced were pervasive and the result of policy rather than just an isolated failure to properly address one inmate's medical condition. *Id*.

In the *Nevinger* case, this court noted, as Buncich points out, that "[p]ursuant to *Strauss* . . . the court will dismiss a [*Monell* claim] when it rests solely on conclusory allegations and fails to allege any well pleaded facts of any occurrence or policy other than that incident involving the plaintiff." *Nevinger*, 2011 WL 2694662, at *3. This court deemed Nevinger's *Monell* claim insufficient because it was based only on very general allegations of such a claim. Nevinger's complaint asserted that the "[Police] Chief . . . and Town of Goodland authorized, tolerated as

institutionalized practices, and ratified the misconduct . . . by: . . . [f]ailing to properly discipline,

restrict, and control employees . . . [f]ailing to take adequate precautions in the hiring, promotion,

and retention of police personnel . . . and . . . [f]ailing to establish or assure [sic] the functioning

of a bona fide and meaningful departmental system for dealing with complaints of police

misconduct[.]" *See* Complaint, Case No. 4:11-CV-25 (DE 1), pp. 3-4, ¶ 19. This court dismissed

Nevinger's *Monell* claim after concluding that he "failed to allege a single fact outside of [his

own single] incident to support any claim under *Monell.* The 'boilerplate allegations' in

paragraph 19 of his Complaint are unsupported by any facts other than those relating to the one

incident between Nevinger and the individual defendants . . . ." *Nevinger*, 2011 WL 2694662, at

*5. The court, however, disagrees with Buncich's contention that the *Nevinger* case is "directly

on point."

In the present case, Scott's complaint sets forth a *Monell* claim with much greater

specificity. For example, Scott alleges that "[i]t is common at Lake County Jail to observe

inmates with clear symptoms of serious medical illness, injury, or conditions who frequently ask

for medical care or to see a doctor, whose requests are routinely delayed or completely ignored

by health care and corrections employees." Complaint, p. 10, ¶ 46. She does not identify these

other inmates or provide specific details to support this assertion. On the other hand, she implies

(or at least the court infers) that she personally observed other inmates who were experiencing

the same difficulties obtaining medical care from the jail. She identifies and enumerates those

alleged policies and practices that she claims caused this problem. Most importantly, the facts

she sets forth regarding her own experience with the Lake County Jail medical system, i.e., being

denied medical care after numerous repeated oral and written requests, and being denied medical

care or being treated with deliberate indifference even when her serious medical condition was obvious–are facts that on their face support her *Monell* claim. Put another way, Scott's complaint does much more than recount one inmate's incident of alleged unconstitutional treatment and then use "boilerplate" *Monell* language as icing to make the cake look appetizing. Her factual assertions regarding her own months long struggle to get adequate medical care despite the fact that her serious medical condition was, or should have been, obvious, coupled with her assertions that other inmates commonly experienced the same lack of care and her assertions that systemic deficiencies in the Lake County Jail medical system caused these problems, provides a sufficient factual basis for Scott's *Monell* claim. This is especially true given that, as the Seventh Circuit noted in *Daniel*, Scott "need not present evidence that these systemic failings affected other specific inmates." *Daniel*, 2016 WL 4254934, at *4.

The case of *Bohannon v. City of Milwaukee*, 998 F.Supp.2d 736 (E.D. Wis. 2014), is instructive. In *Bohannon*, the plaintiff alleged that he was strip searched in violation of his constitutional rights, and brought a *Monell* claim against the City, alleging that the City police department had an unwritten custom or policy of performing illegal searches. In support of his *Monell* claim, Bohannon recounted in great detail the incident that led to his lawsuit, and then asserted that the police department had received many complaints of similar violations in the years preceding his own encounter, and that the City knew or should have known about the complaints but took no action, thereby acquiescing in the illegal activity. Bohannon did not, however, provide specific details about the other alleged similar violations. The City moved for judgment on the pleadings, arguing, as Buncich does in this case, that Bohannon failed to plead sufficient factual matter to support a *Monell* claim. The court disagreed and denied the motion.

Addressing the City's argument that Bohannon's complaint was insufficient because it lacked specificity, the court reasoned that it "does not believe it is necessary for the plaintiff to have pled specifics like the time, place, or identity of the other complaints. General allegations that the City and MPD received complaints is enough to give rise to an inference that its officials had knowledge that other, similar illegal searches were occurring. Frankly, specifics like time, place, and identity would add very little in the way of substance to the allegations of the complaint. Moreover, the plaintiff would not possibly have access to that information without discovery." *Bohannon*, 998 F.Supp.2d at 746. The court then held as follows:

> [A]t this stage of the proceedings, [the court's] job is to take the alleged factual content as true, draw reasonable inferences in the plaintiff's favor, and then determine whether, with that information, the plaintiff has stated a plausible claim for relief. . . . Doing so, and for the reasons more fully discussed above, the Court determines that the plaintiff has alleged facts that state a *Monell* claim against the City that is plausible on its face. The evidence adduced during discovery may ultimately prove that this is not the case, but that is an inquiry for another day. At this stage of the proceedings, the Court is obliged to deny the defendants' motion for judgment on the pleadings on the plaintiff's *Monell* claim against the City.

*Id*. at 747. Also in *Bohannon*, Judge Stadtmueller noted that "[p]rior to the issuance of the *Iqbal* and *Twombly* decisions, it may very well have been possible to state only "boilerplate allegations," and survive dismissal in [a] § 1983 case. . . . But, in the time since, the Seventh Circuit has not returned to such a liberal pleading standard. . . . In fact, the Seventh Circuit has made clear that *Iqbal* applies to motions to dismiss in *Monell* cases, just as it would apply in any other case." *Id*. at 741-42. Judge Stadtmueller then pointed out that this principle applies conversely, too: the court does not apply a *heightened* pleading standard to civil rights claims, including *Monell* claims. *See, e.g., Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) ("In a civil rights case alleging municipal liability, a federal court may not

apply a heightened pleading standard more stringent than the usual Rule 8(a) pleading requirements."). *Id*. at 742.

Scott's Complaint, in terms of the specificity required to state a *Monell* claim, is more akin to Bohannon's (which survived a motion to dismiss[7]) than Nevinger's (which did not). Drawing all reasonable inferences in her favor, the court concludes that, after accepting Scott's facts as true and drawing all reasonable inferences in her favor, her Complaint adequately states a *Monell* claim that is plausible on its face. Accordingly, Buncich's motion to dismiss is denied as to Scott's claim against him, in his official capacity, for denial of medical care.

### III. Individual and official capacity conspiracy claims.

In Count II of her complaint, Scott alleges the following:

> Defendants reached an agreement among themselves to deprive Plaintiff of her constitutional rights and to protect one another from liability for depriving Plaintiff of her rights . . . . In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity. . . . The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

Complaint, pp. 14-15. Scott concludes by stating that her "injuries were caused by employees and contractors of Lake County and the Lake County Sheriff's Department, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices of the Lake County Sheriff and of Defendant Correctional Health, as described above." *Id*., p. 15. Scott

---

[7] Actually, the *Bohannon* case was before the court on a motion for judgment on the pleadings, but the standard of review is the same. *See Bohannon*, 998 F.Supp.2d at 740-41 ("The Court reviews a motion under Rule 12(c) using the same standard it would when reviewing a motion under Rule 12(b)(6).").

does not offer any factual assertions to back up these allegations and the language quoted is the sum and substance of her conspiracy allegation. This point was not lost on Buncich, who argues that Scott's "Complaint states no single fact to support a claim that Sheriff Buncich had knowledge of illegal action involving Plaintiff and agreed in a joint effort with others to continuation of that illegal action in the future." Defendant's Reply, p. 2. Buncich maintains that "[w]hen a complaint alleges vague and conclusory allegations and does not contain a single fact to support the conspiracy claim, it must be dismissed." *Id.* (citing *Winchester v. Marketti*, 2012 WL 2076375 (N.D.Ill. June 8, 2012)). So, Buncich bases his motion to dismiss Count II on the same argument he employed regarding Scott's *Monell* claim. The difference is that this time Buncich's argument carries the day.

Scott responds to Buncich's argument by noting that "the 'minimum ingredient of a conspiracy [] is an agreement to commit some future unlawful act in pursuit of a joint objective.'" Plaintiff's Response, p. 7 (quoting *Redwood v. Dobson*, 476 F.3d 462, 466 (7th Cir. 2007)). After stating this legal principle, Scott contends that she "has plausibly allege[d] constitutional violations [and] it would be improper to dismiss the § 1983 conspiracy claim that is contingent upon that violation." *Id.*, p. 8. Scott attempts to wrap up this rather convoluted argument by quoting an Eighth Circuit case in which the court held that "'[t]he question of the existence of a conspiracy to deprive the plaintiffs of their constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims.'" Plaintiff's Response, p. 8 (quoting *Putnam v. Gerloff*, 701 F.2d 63, 65 (8th Cir. 1983)). Unfortunately for Scott, her argument is based on a leap of faith and a case that is inapplicable.

That is, she assumes she has pled sufficient facts to establish a conspiracy claim in the first place, in which case her argument that it should get to a jury might have some validity. But all she has done, as Buncich points out, is include boilerplate and conclusory statements that allege a conspiracy claim. It's the supporting facts that are missing here, and no amount of icing can make this cake palatable. Neither Scott's Complaint nor her response brief offers nary a hint of the factual basis for her conspiracy claim, whether asserted against Buncich in his individual capacity or his official capacity. And, it doesn't help her cause that the case on which Scott bases her argument is a nearly 35-year-old case from another circuit which, as Buncich properly notes, "deals with the proper jury instruction [for conspiracy], not whether a Plaintiff has properly plead a conspiracy claim to survive a Rule 12(b)(6) motion under *Iqbal*." Defendant's Reply, p. 3. Buncich is correct that the *Putnam* case is not helpful to Scott.

The court concludes that Scott has failed to allege sufficient facts (or any facts, for that matter) to render her conspiracy claims plausible under the *Iqbal* standard. This case, as Buncich contends, is much like *Winchester*, wherein the plaintiff's § 1983 conspiracy claim failed to survive a Rule 12(b)(6) motion for the same reason. The district court in that case held as follows:

> Defendants argue that Count III, § 1983 conspiracy, should be dismissed against all Defendants for failure to state a claim under *Iqbal*'s plausibility standard. In *Cooney v. Rossiter*, 583 F.3d 967 (7th Cir. 2009), Judge Posner explained that even before *Iqbal*, conspiracy allegations were held to a higher pleading standard and that "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough." *Id.* at 971. Post *Iqbal*, Judge Posner explained, "the height of the pleading requirement is relative to circumstances." Where a "vast, encompassing conspiracy" is alleged, "the plaintiff must meet a high standard of plausibility." *Id.* at 971.
>
> Here, Plaintiff alleges a conspiracy between the Grundy County Defendants and the Medical Care Provider Defendants to "deprive Plaintiff of his constitutional

rights and to protect one another from liability." However, the complaint does not contain a single fact to support the conspiracy claim–not even of the loose "on information and belief" type. Instead the conspiracy claim is tacked on at the end almost as an afterthought. This vague and conclusory pleading would probably not have survived pre-*Iqbal;* it certainly fails now. *Id.*

*Winchester*, 2012 WL 2076375, at *5. Scott's conspiracy claims against Buncich, in his official capacity and his individual capacity, meet the same fate for the same reasons and must be dismissed.

### IV. Individual and official capacity claims for failure to intervene.

The allegations Scott presents to support her failure to intervene claim (Count III) are just as boilerplate and conclusory as those related to her conspiracy claims, and Buncich moves to dismiss them for the same reasons, i.e., because they fail to meet the *Iqbal* plausibility standard. Buncich is correct again. First, the court looks to the allegations in Scott's Complaint, which state only that ". . . one or more Defendants had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined, but failed to do so. . . . Defendants' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights." Complaint, p. 15. Scott concludes her failure to intervene claim with the same language she used in her conspiracy claim, to wit: that her "injuries were caused by employees and contractors of Lake County and the Lake County Sheriff's Department, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices of the Lake County Sheriff[.]" *Id.* Also like her conspiracy claim, this language constitutes the entirety of Scott's assertions on this claim. Her brief elaborates a little bit when she states as follows:

Plaintiff has alleged that from sometime in April 2014 until her release on June 3, 2014, Plaintiff repeatedly told Defendant Officers and Defendant Medical Care

> Providers about her symptoms and serious medical needs, but her requests and needs were virtually ignored. . . . She also specifically alleges that Defendants had notice of her objectively serious medical needs. . . . Given that Plaintiff was at the Lake County Jail for more than two months, a jury could infer that Sheriff Buncich had a realistic opportunity to intervene to ensure that Ms. Scott was receiving adequate medical care, and did not. At this stage in the proceedings, these allegations are more than sufficient to survive Sheriff Buncich's Motion to Dismiss.

Plaintiff's Response, p. 10. Once again, Scott is trying to disguise her conclusory allegations as factual assertions, and argue that that is all she needs to do to survive a Rule 12(b)(6) motion. Perhaps a jury *would* infer that Buncich failed to intervene, if there were facts to support that inference, but we will never know because Scott's Complaint is so woefully lacking in factual underpinnings that her claim can't make it that far. She presents no facts at all to establish that Buncich had personal knowledge of her situation, that he had a reasonable opportunity to prevent further harm, and that he willfully chose not to act. Absent such facts, Scott's claim fails to survive Buncich's motion.

"[A plaintiff's] § 1983 claim for failure to intervene requires that she show that one or more of the Defendants had a realistic opportunity to prevent another state actor from committing a constitutional violation but failed to do so. *See Leaf v. Shelnutt*, 400 F.3d 1070, 1093 (7th Cir. 2005). A claim for failure to provide medical care concerns the defendant's knowledge of, and disregard for, a serious medical risk; whereas a claim for failure to intervene concerns the defendant's failure to prevent another from committing a constitutional violation." *Awalt v. Marketti*, 2012 WL 1161500, at *7 (N.D. Ill. Apr. 9, 2012). "To state a failure-to-intervene claim under § 1983, [a plaintiff] must allege that '[a] constitutional violation has been committed by a [state actor]; *and* the [defendant] had a realistic opportunity to intervene to prevent the harm from occurring.'" *Piercy v. Whiteside Cty., Illinois*, 2016 WL 1719802, at *7

(N.D. Ill. Apr. 29, 2016) (quoting *Abdullahi v. City of Madison*, 423 F.3d 763, 744 (7th Cir.

2005)). This means showing that Buncich had actual knowledge that other individuals were

violating Scott's rights and intentionally chose not to do anything about it. It is not enough that

his policies allegedly resulted in Scott being denied adequate health care, since that is a distinct

claim. As the court pointed out in *Winchester*:

> While it is true that failure to provide medical care and failure to intervene are
> essentially claims of failure to perform a duty required by law, they stem from
> different duties. Failure to provide medical care stems from the defendant's own
> personal responsibility to provide care directly to persons. Failure to intervene
> stems from the defendant's duty to protect persons against the conduct of other[s].
> The two may overlap, but they are not commensurate.

*Winchester*, 2012 WL 2076375, at *6. Scott did not plead sufficient facts to support of her failure

to intervene claim against Buncich in either his official or individual capacity, and therefore she

fails to state a plausible claim under the *Iqbal* standard.

## CONCLUSION

For the reasons discussed above, the motion to dismiss filed by Defendant John Buncich

(DE 27) is GRANTED in part and DENIED in part. The motion is granted as follows:

1) Scott's claim against Buncich, in his individual capacity, for denial of medical care is

DISMISSED WITHOUT PREJUDICE;

2) Scott's claim against Buncich, in his individual capacity, for medical malpractice is

DISMISSED WITHOUT PREJUDICE;

3) Scott's claims against Buncich, in his official and individual capacities, for conspiracy are

DISMISSED WITH PREJUDICE;

4) Scott's claims against Buncich, in his official and individual capacities, for failure to intervene

are DISMISSED WITH PREJUDICE;

5) Scott's claim against Buncich, in his official capacity, for punitive damages is DISMISSED WITH PREJUDICE; and

6) Scott's claim for indemnification is DISMISSED WITHOUT PREJUDICE.

The motion to dismiss is denied as to Scott's claim against Buncich, in his official capacity, for denial of medical care (i.e., Scott's *Monell* claim). All other claims asserted against all other defendants are unaffected by this Order and remain pending.


Date: September 23, 2016.


       /s/   William C. Lee
        William C. Lee, Judge
        United States District Court
        Northern District of Indiana