# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

TAMARA RACHEL SCOTT,    )
    )
Plaintiff,    )
    )    CAUSE NO. 2:16-CV-114
    vs.    )
    )
JOHN BUNCICH, *et al.*,    )
    )
Defendants.

## OPINION AND ORDER

This matter is before the Court on "Defendants' Joint Motion to Bifurcate § 1983 *Monell* Claims and Stay Discovery and Trial on Those Claims," filed by the defendants on August 29, 2017 (DE #82). For the reasons set forth below, the motion is **DENIED**.

<u>BACKGROUND</u>

The plaintiff, Tamara Rachel Scott ("Plaintiff"), filed a complaint in this case on April 6, 2016. (DE #1.) Plaintiff was granted leave to file an amended complaint on August 9, 2017,[1] and the first amended complaint was docketed on August 11, 2017.[2] (DE

---

[1] Plaintiff sought leave to add several names of individual party defendants and to update her *Monell* allegations to include the relevant policies and procedures, incorporating information that was obtained during discovery. (See DE #53.)

[2] Several of Plaintiff's original claims against Defendant John Buncich were dismissed by the Honorable William C. Lee on September 23, 2016. (DE #39; see also DE #46.)

#56 & DE #60.)  In her amended complaint, Plaintiff names the
following defendants: (1) John Buncich in his official capacity as
Sheriff of Lake County, Indiana ("Buncich");[3] (2) County of Lake,
Indiana ("Lake County"); (3) Willie Stewart in his individual and
official capacity as Jail Administrator of Lake County, Indiana
("Stewart"); (4) Dr. William Forgey in his individual and official
capacity as Medical Director of Lake County Jail ("Dr. Forgey");
(5) Dr. Robert M. Ehresman, a medical professional at Lake County
Jail ("Dr. Ehresman"); (6) Dr. Kumpol Dennison, a medical
professional at Lake County Jail ("Dr. Dennison"); (7) D. May, a
correctional officer at Lake County Jail ("May"); (8) Lt. Hailey
(a/k/a Haley), a correctional officer at Lake County Jail
("Hailey"); (9) Patricia Kerr, an employee of Lake County Jail
("Kerr"); (10) Unknown Employees of Lake County Jail (the "Unknown
Jail Employees"); (11) Correctional Health of Indiana, Inc., a for
profit Indiana corporation that contracted with Lake County and
the Lake County Sheriff's Department to provide medical care to
the detainees incarcerated at the Lake County Jail ("Correctional
Health"); and (12) Unknown Employees of Correctional Health (the

---

[3]  In the caption of her amended complaint, Plaintiff makes it clear that she
is suing Buncich in his official capacity only, which is consistent with the
Court's previous orders (DE #39 & DE #46) and the allegations set forth in
the amended complaint (DE #60).  Therefore, the Court assumes that reference
to his individual capacity on page 3 of the amended complaint is simply a
typographical error.

"Unknown Correctional Health Employees") (collectively, Defendants). (DE #60.) Plaintiff brings federal claims pursuant to 42 U.S.C. section 1983 and state claims pursuant to Indiana law as follows: Count I – 42 U.S.C. § 1983 – denial of medical care against all Defendants; Count II - 42 U.S.C. § 1983 – conspiracy against all Defendants except for Buncich;[4] Count III - 42 U.S.C. § 1983 – failure to intervene against all Defendants except for Buncich; Count IV – state law medical malpractice against all Defendants except for Buncich; Count V – state law respondeat superior against Correctional Health. (*Id.* at 11-19.)

Plaintiff's claims stem from her arrest on April 1, 2014, and subsequent incarceration at Lake County Jail, where she alleges she received inadequate medical care that led to severe and debilitating lifelong medical problems. (*Id.*) Specifically, Plaintiff alleges that on or about April 4, 2014, while incarcerated, she began experiencing rectal pain that worsened over the following days and weeks to eventually include rectal bleeding, severe pain, vomiting of blood, diarrhea, loss of appetite, weight loss, fever, and constipation. (*Id.* at 7-10.) Despite receiving ample notice regarding her precarious state, the

---

[4] Although not noted in the heading of Count II of the amended complaint, the conspiracy claims against Buncich were previously dismissed by the Court with prejudice. (See DE #39.)

Individual Defendants, including various doctors and correctional employees, repeatedly failed to diagnose and/or treat Plaintiff's medical condition(s). (*Id.*) When she was released from the Lake County Jail on June 3, 2014, she went to St. Anthony Hospital in Crown Point, Indiana, where she was admitted and remained hospitalized until June 9, 2014. (*Id.* at 10-11.) At St. Anthony's, she was treated for a severe rectal infection, dehydration, and a low hemoglobin count. (*Id.* at 11.) Doctors there attempted to perform a colonoscopy but were unable to fully complete the procedure due to the infection, swelling, and damage. (*Id.*) Plaintiff was ultimately diagnosed with severe ulcerative colitis and other debilitating medical problems that she continues to suffer from. (*Id.*)

Plaintiff alleges that her injuries were proximately caused by the policies and practices of Buncich, Stewart, Dr. Fogey, and Correctional Health. (*Id.* at 12.) Plaintiff alleges that Buncich and Stewart had notice of widespread policies and practices by health care and corrections employees at Lake County Jail, wherein inmates with serious medical conditions were routinely denied access to proper medical diagnoses and treatment. (*Id.*) Specifically, Plaintiff alleges that pervasive known procedural deficiencies existed including inadequate/untimely responses to

and examination of inmates' medical needs, inadequate training and supervision of unqualified health care personnel, insufficient staffing levels, routine denials of timely and necessary specialty care from outside providers, a lack of suitable continuity of care and discharge planning, and a failure to adequately punish or discipline prior instances of employee misconduct regarding the foregoing.[5] (*Id.* at 13-17.)

To the extent Plaintiff seeks damages against Buncich and Stewart in their official capacities, these claims are, in effect, actions against the Lake County Sheriff's Department, a municipality. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Smith v. County of Kosciusko*, No. S91-5(RDP), 1991 WL 261766, at *2 (N.D. Ind. Nov. 15, 1991). Similarly, to the extent Plaintiff seeks damages against Dr. Forgey in his official capacity, these claims are, in effect, actions against Correctional Health, a municipality. *Id.* Thus, Plaintiff has effectively asserted *Monell* claims against the Lake County

---

[5]  As noted in footnote 1 above, Plaintiff's complaint was amended, in part, to include updates to her *Monell* allegations based on additional information obtained during discovery regarding the relevant policies and procedures. (See DE #53.)  The record currently includes a report prepared by the U.S. Department of Justice ("DOJ"), Civil Rights Division, on December 7, 2009 ("DOJ Report") (DE #32-1), a copy of the settlement agreement entered into between the DOJ and Lake County Jail on August 18, 2010 ("Settlement Agreement") (DE #32-2), and various excerpts of compliance reports related to the Settlement Agreement (collectively, "Compliance Reports") (see e.g. DE #54-7 through DE #54-12).

Sheriff's Department, Lake County, and Correctional Health (collectively, the "Entity Defendants"). She has also asserted individual claims against the known and unknown medical and correctional personal named above (collectively, the "Individual Defendants").

Defendants filed the instant motion to bifurcate on August 29, 2017. (DE #82.) In it, Defendants request that the Court bifurcate all of Plaintiff's claims against the Individual Defendants from Plaintiff's section 1983 *Monell* claims against the Entity Defendants and to stay discovery and trial on the *Monell* claims until and unless Plaintiff first proves an underlying constitutional violation by the Individual Defendants. (*Id.*) That same day, Defendants also filed a joint motion to stay the *Monell* related discovery until the Court rules on the motion to bifurcate. (DE #83.) On September 11, 2017, Plaintiff filed a response to the motion to bifurcate. (DE #89.) Defendants filed their reply in support of the motion to bifurcate on September 21, 2017. (DE 95.) On October 11, 2017, Magistrate Judge John E. Martin ("Judge Martin") denied the motion to stay. (DE #104.)

At the time the motion to bifurcate was filed, discovery had been pending for almost ten months. (See DE #44 & DE #50.) According to Plaintiff, during that time the parties exchanged

6

multiple rounds of written discovery, engaged in extensive communications regarding electronic discovery, and identified numerous deponents. (DE #89, pp. 5-6.) Additionally, the parties litigated Plaintiff's motion to compel documents and information from Correctional Health and Dr. Fogey, which was ultimately granted by Judge Martin. (DE #54 & DE #86.) Plaintiff further filed a motion to modify the scheduling order to allow additional depositions to be taken, and that motion was granted by Judge Martin, permitting Plaintiff to take the requested ten additional depositions plus the depositions of any fact witnesses and experts disclosed by Defendants. (DE #63 & DE #88.) On January 25, 2018, Plaintiff filed a motion to depose Buncich based on his status as the Sheriff of Lake County and final policymaker during the relevant time period. (DE #109.) The motion, which was unopposed by Defendants, was granted by Judge Martin on January 31, 2018. (DE #111.)

## DISCUSSION

### *Standard*

Federal Rule of Civil Procedure 42(b) states, in relevant part, that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more

separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). Bifurcation may be appropriate if one or more of the Rule 42(b) criteria is met. See *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). Courts have broad discretion in deciding whether to bifurcate issues presented in a case or to try them separately. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Indeed, the district court's exercise of its discretion to bifurcate will be set aside on appeal "only upon a clear showing of abuse." *Treece,* 213 F.3d at 364-65. Federal Rule of Civil Procedure 26(d) also permits a court to stay discovery on *Monell* claims. Fed. R. Civ. P. 26(d); see also *Carr v. City of N. Chicago*, 908 F.Supp.2d 926, 927 (N.D. Ill. 2012). The decision of whether to bifurcate is a case-specific analysis. *Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *3 (N.D. Ill. Nov. 29, 2007).

In the instant motion, Defendants argue that bifurcating the claims will be more convenient for all parties, will avoid prejudice, will expedite the matter, and will economize resources for the Court and parties during the discovery process and trial. (DE #82, p. 3.) However, in response, Plaintiff argues that

judicial economy, convenience, and expediency favor a unitary discovery process and trial. (DE #89, p. 3.)

## *Individual Defendant Liability Effect on Monell Claims*

Defendants begin by arguing that section 1983 actions are particularly well-suited for bifurcation because "unless a plaintiff proves that an officer or other individual municipal official or employee violated his or her constitutional rights, the *Monell* claim against the municipality will fail as a matter of law, and the litigation will be over without the need for discovery or trial on the *Monell* claim." (DE #82, p. 3.) In other words, according to Defendants, an adverse finding as to Plaintiff's individual claims would necessarily dispose of her *Monell* claims. It is true that the Supreme Court has stated, "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); see also *Treece*, 213 F.3d at 364 ("municipality's liability for a constitutional injury requires a finding that the individual officer is liable on the underlying substantive claim") (internal quotation marks, brackets, and citation omitted).

However, as pointed out by Plaintiff, the Seventh Circuit Court of Appeals has cautioned that interpreting the holding of *Heller* to "require[] individual officer liability before a municipality can *ever* be held liable for damages under *Monell*" is an "unreasonable extension" of the law. *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 305 (7th Cir. 2010) (emphasis added). Rather, the distinct factual circumstances of each case must be considered to determine whether municipal liability may be found even in the absence of underlying individual liability. *Id*. at 304. In *Thomas*, the court noted the following:

> The plaintiff in *Heller* sued the City of Los Angeles and individual members of the police force for damages under § 1983, alleging that the officers arrested him without probable cause and used excessive force in making the arrest. On the constitutional claims, the jury returned a verdict for the individual officer, and the Supreme Court agreed that the district court properly dismissed the claim against the City. The Court noted that the jurors were not instructed on any affirmative defenses that the individual officer may have asserted, nor were they presented with any qualified immunity issues. The absence of these defenses is significant . . . . Without any affirmative defenses, a verdict in favor of the officer necessarily meant that the jury did not believe the officer violated the plaintiff's constitutional rights. And since the City's liability was based on the officer's actions, it too was entitled to a verdict in its favor.

*Id.* (internal citations omitted).  In distinguishing the facts of *Heller* from cases where, for example, a plaintiff had only sued the county or where a plaintiff did not know the identity of the individual defendants, the court found that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Id.* at 305 (emphasis in original).  Thus, to determine whether a municipality's liability is dependent on its individual employees, courts must "look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.* (holding that the county could be liable even if none of its individual employees were, because a jury could have found that the individuals were not "deliberately indifferent" to the plaintiff's medical needs but were simply unable to adequately respond due to the breakdowns in the county's policies and procedures).

Turning to the case at hand, the Court agrees with Plaintiff that the nature of the alleged constitutional violations, the theory of liability, and the defenses raised set this case apart from those like *Heller*.  First, more than the Fourth Amendment objective reasonableness standard, which requires no culpable mindset, is at play here; rather, in Eighth Amendment medical care

cases such as this, the subjective "deliberate indifference" standard applies. Compare *Graham v. Connor*, 490 U.S. 386, 397 (1989) with *Thomas*, 604 F.3d at 304-05. Plaintiff alleges that she did not receive adequate medical treatment or diagnosis during her incarceration and that she was ultimately "simply released from jail, gravely ill, to transport herself to the emergency room." (DE #89, p. 5; see also DE #60, pp. 7-11.) Plaintiff's theory of *Monell* liability includes allegations that the facility was insufficiently staffed and that its health care personnel were unqualified, lacking in experience, and inadequately trained and supervised. (DE #60, pp. 12-17.) Plaintiff also points to widespread policies and/or practices that resulted in inmates routinely being denied timely and necessary specialty care from outside providers and being discharged without proper planning or continuity of care. (*Id.*) In addition, Plaintiff's claims implicate both named and unnamed/unknown Individual Defendants. (*Id.* at pp. 5, 7, 9.) Based on these allegations, it is possible that a jury could find one or more Entity Defendants liable without finding that any of the Individual Defendants were individually responsible. As the court noted in *Thomas*, it would not be difficult to reconcile a verdict wherein a jury determined that the Individual Defendants were not necessarily deliberately

indifferent to Plaintiff's medical needs but simply could not respond adequately due to the policies described above. *Thomas*, 604, F.3d at 305. For example, Plaintiff points to several DOJ Compliance Reports in the record that could reasonably suggest the Individual Defendants were unable to provide Plaintiff with an urgently needed colonoscopy because of the well-documented deficiencies that existed with regard to transportation and tracking of these types of off-site appointments. (See DE #89, p. 5, n. 2 (citing DE #54-7 through DE #54-9).)

In their reply brief, however, Defendants seem to suggest that because Plaintiff's *Monell* claims do not directly "align with" or "mirror" those in *Thomas*, bifurcation is appropriate. (DE #95, pp. 3-4.) Defendants argue that this is so because none of Plaintiff's allegations "state that a policy or custom existed that the individual defendants could not respond adequately to the alleged serious medical needs due to a specific policy, such as detailed in *Thomas*." (*Id.* at 4.) Defendants assert that the eleven policies and/or practices outlined in the amended complaint are simply "general in nature" and "amount to a broad overarching *Monell* claim" rather than a well-documented policy breakdown as was found in *Thomas*. (*Id.*; see also DE #82, pp. 4-5.) The Court disagrees. As noted above, based on the allegations in the amended

complaint and the additional information contained in the record, the policy deficiencies are described in sufficient detail so as to ward off a motion for bifurcation at this stage.[6] Numerous district courts in this circuit have denied bifurcation based on similarly pled allegations.[7] See, e.g., *Terry v. Cook Cnty. Dep't of Corr.*, No. 09C3093, 2010 WL 2720754, at *2-3 (N.D. Ill. July 8, 2010); *Martinez v. Cook Cnty.*, No. 11 C 1794, 2011 WL 4686438, at *1-2 (N.D. Ill. Oct. 4, 2011); *Carter v. Dart*, No. 09 C 956, 2011 WL 1466599, at *1-4 (N.D. Ill. Apr. 18, 2011).

In addition to the nature of the constitutional violations and theories of liability, Plaintiff points out that the Individual Defendants have raised immunity defenses in this case. (See e.g. DE #81, p. 25.) As noted by the court in *Thomas*, the absence of any affirmative defenses and qualified immunity issues in the

---

[6] Defendants repeatedly characterize Plaintiff's *Monell* allegations as "tenuous[s]," "general," and seem to discount the existence of the DOJ Report, Settlement Agreement, and Compliance Reports altogether. However, the Court finds that Plaintiff's allegations, albeit of a different type, are at least as detailed as those found in *Miller v. City of Plymouth*, 2:09-CV-205-JVB-PRC, 2010 WL 1754028, at *3 (N.D. Ind. Apr. 29, 2010), the case cited by Defendants to support their argument. As pointed out earlier in the instant case by the Honorable William C. Lee, even Plaintiff's original complaint - which was less detailed than the amended complaint – contained *Monell* claims based on specific facts and policies/procedures that went well beyond vague, boilerplate allegations. (DE #39, pp. 7-20.)

[7] Plaintiff also argues that bifurcation should be denied because her victory on the individual claims would likewise fail to resolve her *Monell* claims, as Correctional Health could be held liable for punitive damages separate from any damages award against the Individual Defendants. (DE #89, p. 11.) Because arguments regarding punitive damages need not be addressed at this point, this issue does not affect the Court's current analysis regarding bifurcation.

*Heller* case was significant, for "[w]ithout any affirmative defenses, a verdict in favor of the officer necessarily meant that the jury did not believe the officer violated the plaintiff's constitutional rights. And since the City's liability was based on the officer's actions, it too was entitled to a verdict in its favor." *Thomas*, 604 F.3d at 304-05 (citing *Heller*, 475 U.S. at 798-99). Because qualified immunity defenses have been raised here, it is possible that a jury could credit those defenses without foreclosing Plaintiff's *Monell* claims as described above. Thus, bifurcation may not prevent a second trial if a jury finds the Individual Defendants immune. See e.g. *McIntosh v. City of Chicago*, No. 15 C 1920, 2015 WL 5164080, at *8 (N.D. Ill. Sept. 2, 2015) ("bifurcation may not avoid a second trial if the officers are immune, and the second trial (of the *Monell* claim) would likely duplicate the first trial against the individual officers"); *Clarett v. Suroviak*, No. 09 C 6918, 2011 WL 37838, at *1-3 (N.D. Ill. Jan. 3, 2011) (denying bifurcation because if the officers were found not liable based on their qualified immunity defense, "there would still be a need for a second duplicative trial as to the Village's liability"); *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000) (denying bifurcation because, among

other things, the individual officers asserted qualified immunity defenses).

Defendants argue in reply that the issue concerning inconsistent verdicts due to potential qualified immunity defenses is premature and should be addressed at the close of trial on the individual claims. (DE #95, pp. 2-3.) While it is true that qualified immunity issues can be addressed following the initial trial, none of the cases cited by Defendants (including one of this Court's own previous opinions)[8] stand for the proposition that the issues *must* be addressed separately or that bifurcation is required on that basis. In fact, as noted in *Saunders v. City of Chicago*, 146 F. Supp. 3d 957, 969–70 (N.D. Ill. 2015), the court was not persuaded in either direction on the issue of immunity and stated that it did "not influence the Court's calculus regarding the propriety of bifurcation." [9]

---

[8] See *Meredith v. Lake County Sheriff*, No. 2:14-CV-183, 2016 WL 4751198, at *3, n. 2 (N.D. Ind. Sept. 13, 2016); *Price v. Kraus*, 2:15-CV-331-PRC, 2016 WL 369682, at *2, n. 1 (N.D. Ind. Feb. 1, 2016). See also *Saunders v. City of Chicago*, 146 F. Supp. 3d 957, 968 (N.D. Ill. 2015) (recognizing that bifurcation motions are highly discretionary in nature and noting that the court itself had "both granted and denied motions to bifurcate" because each motion had to be evaluated on its own merits).

[9] Defendants also seem to suggest *McIntosh* is distinguishable from the instant case because, there, the motion to bifurcate was denied during the "early stage of litigation," whereas here Plaintiff claims that the parties have engaged in a significant amount of discovery. (DE #95, p. 3.) While it is true that discovery has progressed in this case, the Court still cannot "unequivocally state that there can be no municipal liability in the absence of underlying individual liability," and, as described above, it is plausible to reach consistent verdicts with regard to Individual versus Entity

16

Thus, the Court agrees with Plaintiff that, in this particular case, *Heller* is not implicated in a way that would favor bifurcation.

## *Efficiency, Convenience, and Economy*

Defendants argue that it will be more efficient, convenient, and economical to resolve Plaintiff's claims against the Individual Defendants before turning to the more "burdensome and time-consuming task of litigating the *Monell* claims." (DE #82, p. 5.) Defendants assert that separating the *Monell* claims at this stage will "expedite Plaintiff's claims against the Individual Defendants and economize resources since the extensive amount of discovery necessary to prove a *Monell* claim against the [Entity] Defendants will be eliminated," and they allege that they will need to spend an "extraordinary amount of time and money" to defend against the *Monell* claims. *Id*. Plaintiff, on the other hand, argues that bifurcation would lengthen both the discovery phase and the trial phase for no benefit, which would "severely prejudice [her] by bringing substantial delay and unwarranted expense to disposition of her case, in which the individual and *Monell* claims overlap significantly." (DE #89, p. 12.) Plaintiff points out

Defendant liability based on the presentation of immunity defenses. *McIntosh*, 2015 WL 5164080, at *8. Defendants' argument is unpersuasive.

that she has already devoted substantial time and expense into discovery of *Monell* issues. (*Id.*) The Court acknowledges that case law in this circuit has gone both ways on the issue of whether bifurcation is appropriate based on these types of issues. For example, many district courts have found that discovery of *Monell* claims "can add significant time, effort, and complications to the discovery process." *Medina*, 100 F.Supp. 2d at 895; *see also Readus v. Dercola*, No. 09 C 4063, 2012 WL 1533167, at *3 (N.D. Ill. May 1, 2012). However, other courts have concluded that bifurcation at this stage may actually *add* unnecessary complexity and confusion. "A stay of *Monell* discovery could, and often does, give rise to arguments about whether Plaintiffs' discovery requests relate to his *Monell* claim or to his other claims." *Cadle v. City of Chicago*, No. 15 C 4725, 2015 WL 6742070, at *2 (N.D. Ill. Nov. 2, 2015).

Here, Defendants argue that Plaintiff's *Monell* claims should be bifurcated because litigating them will be burdensome, and an "extraordinary amount of time and money must be spent" to properly defend against them. (DE #82, p. 5.) They assert that these claims are unduly complex – being premised upon numerous policies and practices – and they point to Plaintiff's "expansive" discovery requests regarding the DOJ Report, Settlement Agreement, and

Compliance Reports as evidence of this complexity and its effect on the discovery process. (*Id*. at 4-5 & DE #95, pp. 5-6 (both citing DE #82-1 through 82-3).) They also point out that additional depositions were requested by Plaintiff because of her *Monell* claims. (*Id*. at 6.) Defendants ultimately urge the Court to grant bifurcation as a means of promoting judicial economy because it will eliminate the need for judicial intervention into discovery disputes, rulings on dispositive motions related to the *Monell* claims, and the likelihood of a long, complex trial.

As an initial matter, the Court notes that nothing about Plaintiff's "Proposed Email Search Protocol" or requests for production regarding the DOJ Report and Settlement Agreement are overly burdensome on their face; rather, they appear to be straightforward attempts to gather information related to documents that have existed and been known to the parties since very early on in this litigation. As pointed out by Plaintiffs, at the time the motion to bifurcate was filed, discovery concerning both the individual and *Monell* claims had been pending for nearly a year, and discovery has continued to progress post-filing. In fact, Defendants' motion to stay discovery pending determination of the bifurcation issue was denied by the Court in October of 2017 (DE #104), and Plaintiff's motion to take the deposition of

Buncich, which will clearly include *Monell* information, was recently granted. (DE #109 & DE #111.) Without more, Defendants' allegations regarding the "extraordinary" amount of time and money that will be spent are hyperbolic and non-specific in nature and are not enough to persuade the Court that bifurcation is warranted here. See *Cadle v. City of Chicago*, No. 15 C 4725, 2015 WL 6742070, at *2 (N.D. Ill. Nov. 2, 2015). In fact, all of the alleged time and cost savings described by Defendants remain speculative and would only be realized if *Monell* discovery would never have to be litigated at a later date. See *Carter v. Dart*, No. 09 C 956, 2011 WL 1466599, at *5 (N.D. Ill. Apr. 18, 2011) ("If the Court were to follow Defendants' proposed schedule, there might be a need for two rounds of discovery, two trials to prepare for, and two trials that would include much redundant evidence. Such a result would excessively prolong this case and would not serve judicial economy.").

After reviewing the particular circumstances presented in this case as well as its current procedural posture, the Court finds Plaintiff's position more persuasive. First, as noted in detail above, adjudication of the individual claims will not necessarily dispose of the *Monell* claims. Thus, bifurcation could likely require two rounds of discovery (including the potential of

20

dual depositions of many of the individuals), two rounds of motion practice, and two rounds of trial -- none of which would be efficient or economical for the parties and/or the Court. See *Id.* Moreover, as stated succinctly by Plaintiff, "[t]he policies and practices that governed the Individual Defendants' behavior in the jail, the oversight and supervision that they received, the effect of policies on their performance with respect to Plaintiff, and many other issues are both relevant to claims against the Entity Defendants and the actions and omissions of Individual Defendants." (DE #89, p. 13.) Because these types of claims overlap with regard to evidence, parties, witnesses, and experts, the Court finds it likely that bifurcation will lead to more discovery disputes rather than to less.[10] See e.g. *Terry*, 2010 WL 2720754, at *3 ("If the Court were to grant the bifurcation motion, the need for the parties to separate *Monell* evidence from individual liability evidence may further complicate rather than simplify these proceedings."). Moreover, as the court noted in *Cadiz*, "[t]o the extent that plaintiff's *Monell* discovery requests

---

[10]   In their reply, Defendants point to Plaintiff's sole motion to compel and the resultant attorney fees as evidence that the *Monell* related discovery is burdensome and complex. (DE #95, p. 6.)  However, that motion was granted in full by the Court two days after the instant motion to bifurcate was filed, and Defendants do not adequately explain why an already resolved discovery dispute necessarily leads to the conclusion that all *Monell* discovery going forward will be similarly complicated or expensive if bifurcation is not granted.  (DE #54 & DE #86.)

are overly broad or would impose undue burden and expense, the court can and will tailor them as necessary, as other courts have done." *Cadiz*, 2007 WL 4293976, at \*3. Based on the foregoing, the Court finds that considerations of efficiency, convenience, and economy are not best supported by bifurcation.

## *Prejudice*

Finally, Defendants argue that, while Plaintiff will not be prejudiced by bifurcation, "presenting evidence regarding an alleged entity-wide policy, practice or custom of improper actions by the [Entity] Defendants poses a danger of undue prejudice to the Individual Defendants by creating a perception that the entity that employs each Individual Defendant routinely acts improperly, even if the Individual Defendants acted properly in this case." (DE #82, p. 7.) However, the Court finds that this argument is premature. As other district courts have noted, "judges often address and can mitigate potential prejudice that might arise from a unitary trial involving multiple defendants and multiple claims through the use of limiting instructions, motions in limine and the Federal Rules of Evidence." *Cadiz*, 2007 WL 4293976, at \*3 (citing *Giles v. City of Chicago*, No. 12-CV-6746, 2013 WL 6512683, at \*2 (N.D. Ill. Dec. 6, 2013); *Elrod v. City of Chicago*, Nos. 06

C 2505, 07 C 203, 2007 WL 3241352, at *7 (N.D. Ill. Nov. 1, 2007);
*Medina*, 100 F. Supp. 3d at 897; *see also Awalt v. Marketti*, No. 11
C 6142, 2012 WL 1161500, at *13 (N.D. Ill. Apr. 9, 2012) ("The
Court has at its disposal an[y] number of tools to properly order
and organize a trial that will not be unfairly prejudicial to any
of the Defendants"). These tools should be sufficient to address
issues of potential prejudice at trial and if not, the Court may
still order a bifurcation of trial at a later stage.

Ultimately, Defendants have not clearly shown that they would
be prejudiced if bifurcation is denied. Whatever efficiencies
might be gained by bifurcation are offset by the potential for
confusion of issues and discovery, inefficiency in delaying the
case, and possible prejudice to Plaintiff during that delay. See
e.g. *Miller,* 2010 WL 1754028, at *3 (quoting *Cadiz*, 2007 WL
4293976, at *5) (stating a "stay of *Monell* discovery will achieve
cost savings only if one assumes that the parties are never
required to go back and conduct *Monell* discovery at some later
date").


CONCLUSION

For the reasons set forth above, "Defendants' Joint Motion to
Bifurcate § 1983 *Monell* Claims and Stay Discovery and Trial on

23

Those Claims," filed by Defendants on August 29, 2017 (DE #82), is

**DENIED**.


DATED: March 30, 2018             /s/ RUDY LOZANO, Judge
                                  United States District Court